UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA, :

-against- :

KEYON MCLAUGHLIN, :

Defendant. :

------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-cr-419 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

On October 17, 2024, a grand jury of this district returned an indictment charging Defendant Keyon McLaughlin ("Defendant") with: (1) Hobbs Act robbery, 18 U.S.C. § 1951(a); (2) bank fraud, 18 U.S.C. § 1344(2); (3) aggravated identify theft, 18 U.S.C. §§ 1028A(a)(1), (b), (c)(5); (4) attempted Hobbs Act extortion, 18 U.S.C. § 1951(a); and (5) transmission of threats to injure, 18 U.S.C. § 875(c). *See*, Indictment, Dkt. Entry No. 1. After Defendant was arraigned on the indictment, the Honorable James R. Cho, U.S. Magistrate Judge of this district, issued an Order of Detention Pending Trial pursuant to 18 U.S.C. § 1342(f)(1). *See*, Order of Detention, Dkt. Entry No. 10. On November 21, 2024, a grand jury of this district returned a superseding indictment charging Defendant with, in addition to the five counts listed above: (1) attempting to provide contraband to an inmate in prison, 18 U.S.C. §§ 1791(a)(1), (b)(3) (Count Six); (2) possessing contraband in prison, 18 U.S.C. §§ 1791(a)(2), (b)(3) (Count Seven); and (3) possessing a dangerous weapon in a federal facility, 18 U.S.C. § 930(e)(1) (Count Eight). *See*, Sup. Indictment, Dkt. Entry No. 13. Defendant was arraigned on the superseding indictment on November 26, 2024. *See*, Minute Entry dated November 26, 2024.

On Defendant's motion, the Court dismissed counts 1-5 of the superseding indictment and the underlying indictment on December 2, 2025. *See*, Minute Entry dated December 2, 2025. On February 17, 2026, Defendant moved to dismiss Counts Six and Seven pursuant to Fed. R. Crim.

P. 12 ("Rule 12").[1] *See*, Mot. to Dismiss the Indictment ("Mot."), Dkt. Entry No. 48. The Government opposed the motion. *See*, Opp'n to Mot. ("Opp'n"), Dkt. Entry No. 49. Defendant replied. *See*, Reply, Dkt. Entry No. 50. Defendant filed a supplemental letter in support of his motion on May 21, 2026. *See*, Def.'s Supp. Letter, Dkt. Entry No. 52. The Government filed a supplemental opposition on June 5, 2026. *See*, Govt.'s Supp. Letter, Dkt. Entry No. 54. For the reasons set forth below, Defendant's motion is granted as to Count Six and denied as to Count Seven.

## **BACKGROUND**

Defendant accepts as true the facts as alleged in the superseding indictment for purposes of his motion. *See*, Mot. at 1. Indeed, it is well settled that, "[i]n evaluating a motion to dismiss the indictment, a court must accept the facts alleged in the indictment as true and determine only whether the indictment is valid on its face." *United States v. Full Play Group, S.A.*, 2021 WL 5038765, at *4 (E.D.N.Y. Oct. 29, 2021) (internal quotation marks, alterations omitted).

The following facts are drawn from the superseding indictment filed on November 21, 2024. Where Defendant's motion "necessarily implicate[s] facts beyond the confines of the superseding indictment," the Court will "consider facts extrinsic to the indictment." *See*, *United States v. Greenberg*, 2022 WL 827304, at *1 (S.D.N.Y. Mar. 9, 2022) (citing *United States v. Cervero*, 949 F.2d 559, 567 (2d Cir. 1991); *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997)).

On October 17, 2024, a grand jury in this district returned a five-count indictment against Defendant, and an arrest warrant was issued on the same day. *See*, Indictment; Arrest Warrant, Dkt. Entry No. 2. After law enforcement was unable to execute the arrest warrant, Defendant agreed to and did self-surrender at the 76th Precinct in Brooklyn. *See*, Opp'n, Ex. A, ¶ 4.

[1] Defendant is not moving to dismiss Count 8, which remains pending.

Defendant then was transported to the District Court for the Eastern District of New York for arraignment and taken to a courthouse holding cell. *Id.*; Opp'n, Ex. B. Defendant was arraigned before Magistrate Judge Cho, who issued an Order of Detention Pending Trial pursuant to 18 U.S.C. § 1342(f)(1) and remanded Defendant to the custody of the Attorney General. *See*, Minute Entry dated October 18, 2024; Order of Detention at 3 ("The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility. . . .").

Defendant then was escorted by a Deputy United States Marshal ("DUSM") back to a courthouse holding cell, where the DUSM conducted an "in-custody search" of Defendant.[2] *See*, Opp'n, Ex. B. The search yielded: (1) 19 matches; (2) two hand rolled cigarettes; (3) a small, black packet with a marijuana symbol and the words "Premium Tobacco" printed on the front, "Hot Graba" on the back, and white powder inside; and (4) a razor blade found underneath the sole of Defendant's shoe. *Id.* After the search, the DUSMs placed Defendant in restraints and moved him to a holding cell before he was transported to the Metropolitan Detention Center ("MDC"). *Id.* Subsequently, a grand jury in this district returned a superseding indictment on November 21, 2024, that, in addition to the five counts in the underlying indictment, charged Defendant with: (1) attempt to provide contraband in prison pursuant to 18 U.S.C. § 1791(a)(1); (2) possession of contraband in prison pursuant to 18 U.S.C. § 1791(a)(2); and (3) possession of a deadly weapon in a federal facility pursuant to 18 U.S.C. § 930(e)(1) (Counts Six through Eight, respectively). *See*, Sup. Indictment.

---

[2] Defendant suggests in his motion that the search was conducted before he was arraigned and remanded. *See*, Mot. at 1. However, the DUSM Report, attached to the Government's opposition as Exhibit B, indicates that the search was conducted after Defendant was arraigned and remanded. *See*, Opp'n, Ex. B. As whether the search took place before or after arraignment necessarily is implicated by Defendant's motion, it is proper for the Court to consider the DUSM Report and accept the facts contained therein as true for purposes of this motion. *See*, *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *Greenberg*, 2022 WL 827304, at *1.

Defendant now seeks dismissal of Counts Six and Seven of the superseding indictment pursuant to Rule 12. *See generally*, Mot. Defendant contends that dismissal is warranted as a matter of law because: (1) a courthouse holding cell is not a "prison" pursuant to § 1791(d)(4); (2) he was not an "inmate" during the alleged events; and (3) a defendant cannot be liable pursuant to § 1791(a)(1) for attempting to provide contraband to his "future self" who later would become an inmate because the statute requires two distinct people. *Id.* at 2. The Government opposes, contending that: (1) a courthouse holding cell does constitute a "prison" as defined by § 1791(d)(4); and (2) § 1791(a)(1) does not require a criminal defendant to provide contraband to another person. *See*, Opp'n at 3-4, 7.

## LEGAL STANDARD

Pursuant to Rule 12(b)(3)(B)(v), a defendant may move to dismiss an indictment for "failure to state an offense." *See*, *United States v. Ahmed*, 94 F. Supp.3d 394, 404 (E.D.N.Y. 2015) ("In other words, Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds.") (citing *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012)). Under Rule 12, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

"However, a defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Greenberg*, 2022 WL 827304, at *6; *See also*, *Stringer*, 730 F.3d at 124 ("[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.") (cleaned

up). "Nevertheless, 'a charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged.'" *United States v. O'Sullivan*, 2021 WL 1979074, at *2 (E.D.N.Y. May 18, 2021) (quoting *United States v. Benitez-Dominguez*, 440 F. Supp.3d 202, 205 (E.D.N.Y. 2020)).

**DISCUSSION**

**I. The Charging Statutes**

Defendant was indicted under, *inter alia*, 18 U.S.C. § 1791 and § 930. *See*, Sup. Indictment. Section 1791(a) provides as follows:

> (a) Whoever—
>
> (1) in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so; or
>
> (2) being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;
>
> shall be punished as provided in subsection (b) of this section.

18 U.S.C. §§ 1791(a)(1), (2). The term "prison" is defined as: "a Federal correctional, detention, or penal facility or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). The statute does not define the term "inmate." *See*, 18 U.S.C. § 1791(d).

Section 930(e) provides in relevant part:

> [W]hoever knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal court facility, or attempts to do so, shall be fined under this title, imprisoned not more than 2 years, or both.

18 U.S.C. § 930(e)(1). The term "Federal court facility" is defined as "the courtroom, judges' chambers, witness rooms, jury deliberation rooms, attorney conference rooms, prisoner holding cells, offices of the court clerks, the United States attorney, and the United States marshal,

probation and parole offices, and adjoining corridors of any court of the United States." 18 U.S.C. § 930(g)(3).

## II. Whether A Courthouse Holding Cell Constitutes A "Prison" Pursuant to 18 U.S.C. § 1791

Defendant moves to dismiss Counts Six and Seven on the grounds that a courthouse holding cell does not, as a matter of law, constitute a "prison" subject to 18 U.S.C. § 1791. *See*, Mot. at 3-4. Specifically, Defendant argues that: (1) a courthouse holding cell is not a "prison" under the plain language of the statute; and (2) § 1791 cannot be read to include a courthouse holding cell based on the legislative history of the statute and because § 930(e) already prohibits the possession of a deadly weapon in courthouse holding cells. *Id.* at 4-9. Separately, Defendant argues that he also was not an "inmate" during the events alleged in the superseding indictment. *See*, Mot. at 6. The Government counters that: (1) a courthouse holding cell falls squarely within the plain language of § 1791, which courts in other districts similarly have concluded; and (2) the mere fact that Defendant's alleged conduct simultaneously may violate both § 930 and § 1791 does not mean that the charge under § 1791 fails as a matter of law. *See*, Opp'n at 8-10. As set forth below, the Court finds that the term "prison" as used in § 1791 does encompass a courthouse holding cell and that Defendant was an "inmate" during the alleged events.

### A. The Plain Meaning of the Terms "Prison" and "Inmate"

"Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (cleaned up). In conducting such an analysis, courts "review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009) (internal quotation marks omitted); *See also*, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-67 (2012) (relying on dictionary definitions to aid in interpreting statutory text).

Defendant contends that under the statutory definition of "prison," § 1791(a) only applies to "prisons" in their ordinary meaning (*e.g.*, federal detention facilities such as the MDC), citing various dictionary definitions of the term "prison" in support. *See*, Mot. at 4.[3] Defendant's reliance on dictionary definitions for the word "prison" paints an incomplete picture, however, as a "prison" is just one component of the defined term of "prison" under § 1791. Indeed, Congress carefully defined the term "prison," and the Court must give meaning to each and every part of that definition, not just one aspect of it. *See*, *Negonsott v. Samuels*, 507 U.S. 99, 106 (1993) (explaining that in interpreting a statute, the Court must give effect to "every clause and word of [the] statute").

While Defendant's argument tracks the first clause of the definition, "a Federal correctional, detention, or penal facility," it ignores the more expansive clause that follows: "any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). The use of the word "any" in this clause expands the scope of the statute to encompass more than just federal correctional institutions like the MDC. *See*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)); *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 517 (2d Cir. 2023) ("Any means every; its meaning is expansive rather than restrictive.") (internal quotations omitted). The word "facility" is also broad and, pursuant to its ordinary, common meaning, § 1791 would capture any building or room used

[3] *See, e.g.*, "Prison," Encyclopedia Britannica Online, https://www.britannica.com/topic/prison (explaining that a "prison" is "an institution for the confinement of persons who have been remanded (held) in custody by a judicial authority or who have been deprived of their liberty following conviction for a crime"); "Prison," Legal Information Institution, Cornell Law School, Wex Definitions Project, https://www.law.cornell.edu/wex/prison ("Prison refers to a confinement facility for convicted felons sentenced to more than one year of imprisonment. Also known as a penitentiary.").

to hold people in custody at the discretion of the Attorney General. *See*, "Facility," Am. Heritage Dict., https://ahdictionary.com/word/search.html?q=facility (5th ed. 2022) ("A building, room, array of equipment, or a number of such things, designed to serve a particular function); *See also*, "Facility," Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/facility ("[S]omething (such as a hospital) that is built, installed, or established to serve a particular purpose.").

It is undisputed that the United States Marshals Service ("USMS") acts under the authority and at the direction of the Attorney General, and is responsible for the custody and safekeeping of pretrial detainees. *See*, 28 U.S.C. § 561(a); 28 C.F.R. § 0.111(k). It also is undisputed that the courthouse holding cells in the federal courts are controlled and operated by the USMS. *See*, LORRAINE H. TONG & SHAWN REESE, CONG. RSCH. SERV., R41138, FEDERAL BUILDING, COURTHOUSE, AND FACILITY SECURITY 8 (2011) ("Other space in the court facilities under the control of USMS includes holding cells adjacent to courtrooms, interview rooms used by attorneys and prisoners, cellblocks, prisoner elevators, and office space for USMS use."). Thus, a courthouse holding cell, which is controlled and operated by the USMS at the direction of the Attorney General and where Defendant temporarily was detained after he was remanded to the custody of the USMS pending trial, sits squarely within the definition of a "prison" as a "facility in which persons are held in custody by direction of . . . the Attorney General." 18 U.S.C. § 1791(d)(4).

To accept Defendant's argument that § 1791 does not extend to courthouse holding cells would mean that the word "facility" has no independent meaning from "prison." That cannot be the case as it would create surplusage in the statute. *See*, *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.") (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)). Indeed, applying the

canons of *noscitur a sociis* and *ejusdem generis*, each word in a list (and general words used thereafter) presumptively has a "similar" meaning to the others. *See*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575-76 (1995); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 (2012). Generally, courts should "interpret a general term that follows specific ones to refer only to items of the same 'class' as the specific ones." *Eisenhauer*, 84 F.4th at 521. However, courts also must give meaning to every clause and word of a statute. *See*, *Negonsott* 507 U.S. at 106. Applying these canons, it follows that a "facility" under § 1791 must be similar, yet different in some capacity from a "prison [or] institution." A courthouse holding cell, where inmates temporarily are held in custody by the USMS as they are transported to and from a permanent detention facility, falls within the scope of a "facility in which persons are held in custody by direction of . . . the Attorney General." Defendant's intimation that the term "prison" only encompasses facilities where people are held pretrial or post-conviction for an extended period of time has no support in the statute or elsewhere. *See*, Mot. at 5. Moreover, the dearth of case law in this circuit does not compel a finding that the term "prison," contrary to Defendant's suggestion, cannot include a courthouse holding cell.

Defendant further contends that the "statutory scheme, and the placement and purpose of the text within that scheme" support a finding that the term prison "pertains only to correctional facilities and not courthouse facilities." *See*, Mot. at 5. While it is true that "the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of the statute," a title does not "override the plain words of a statute." *Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998); *Dubin v. United States*, 599 U.S. 110, 121 (2023). As the plain meaning of the statute is unambiguous, the Court need not rely on the title of the statute or its placement in the broader statutory scheme. *See*, *United States v. Zheng*, 113 F.4th 280, 293 (2d Cir. 2024)

("Because we disagree with Zheng's argument that [the statute] is ambiguous . . ., we need not consider his arguments that go beyond the statutory text.").

Finally, Defendant maintains that he was not an "inmate" during the alleged events, as that term is defined by § 1791. The Government did not respond to this argument in its opposition, but clarified at the April 15, 2026, oral argument on the motion that Defendant was searched by the DUSM after he was arraigned and Judge Cho issued an Order of Detention. *See*, Apr. 15, 2026, Tr., Dkt. Entry No. 51 at 4. At the April 15 oral argument, Defendant did not contest that the search was conducted after he was remanded. *Id.* However, Defendant does contend that he still was not an inmate at this point because he had not entered any "prison facility." *Id.* Defendant cites to no authority to suggest that, after a criminal defendant has been remanded pending trial, he would not be an "inmate" until he crossed the physical threshold of a federal correctional facility. Indeed, the very definitions that Defendant advanced for the term "prison" set out that an "inmate" includes a pretrial detainee, and nothing suggests this status would not "kick in" until a defendant physically enters a "prison." *See*, Mot. at 4 ("This statutory definition conforms with the ordinary understanding of the word 'prison' as being a place designed to house people (referred to as 'inmates') *who have been ordered detained pending trial* on criminal charges or sentenced to custody following conviction.") (emphasis added). Even if this were true, Defendant's argument still would fail because, as discussed above, a courthouse holding cell is a "prison" under § 1791, and, thus, Defendant would have become an "inmate" as soon as he crossed the threshold to the courthouse holding cell. Accordingly, the Court finds that Defendant was an "inmate" during the alleged events.

### B. Legislative History of § 1791 and the Applicability § 930

Defendant also argues that the term "prison" under § 1791 cannot include a courthouse holding cell because 18 U.S.C. § 930 specifically prohibits the possession of dangerous weapons

in a "Federal court facility." Defendant suggests that, because "Congress didn't include 'prisoner holding cells' in the [§] 1791 definition of 'prison,' given that it specifically did include it in the [§] 930 definition[] strongly suggests that [courthouse] holding cells fall outside the ambit of [§] 1791's definition." Mot. at 8. The Government counters that, just because Defendant's conduct may violate two statutes "does not mean that a charge brought under one of the statutes must necessarily fail as a matter of law." Opp'n at 10.

"If the meaning of a statute is ambiguous, the court may resort to legislative history to determine the statute's meaning." *Puello v. Bureau of Citizenship and Immig. Servs.*, 511 F.3d 324, 327 (2d Cir. 2007). "But, in so doing, we must 'construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results.'" *Id.* (citing *Connecticut ex rel. Blumenthal v. United States Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000)). As the language of § 1791 is unambiguous, the Court need not examine the legislative history of the statute to discern Congress's intent. *See*, *Wetzler v. FDIC*, 38 F.3d 69, 73 (2d Cir. 1994). However, even assuming *arguendo* that the statute is ambiguous, the Court's review of the legislative history demonstrates that Congress did intend for the term "prison" to encompass facilities such as a courthouse holding cell.

18 U.S.C. § 1791 was first enacted in 1948, and the statute was titled "Traffic in contraband articles." *See*, Library of Congress, June 25, 1948, c. 645, 62 Stat. 786. The language of the original statute provided as follows:

> Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years.

18 U.S.C. § 1791 (1948). The 1948 statute was limited in scope and only prohibited trafficking or attempted trafficking of contraband into or from "any Federal penal or correctional institution." *Id.*

Since then, Congress has amended § 1791 six times. The first amendments were promulgated in 1984, and provide:

> (a) Offense.—A person commits an offense if, in violation of a statute, or a regulation, rule, or order issued pursuant thereto—
>
> (1) he provides, or attempts to provide, to an inmate of a Federal penal or correctional facility—
>
> (A) a firearm or destructive device;
>
> (B) any other weapon or object that may be used as a weapon or as a means of facilitating escape;
>
> (C) a narcotic drug as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802);
>
> (D) a controlled substance, other than a narcotic drug, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), or an alcoholic beverage;
>
> (E) United States currency; or
>
> (F) any other object; or
>
> (2) being an inmate of a Federal penal or correctional facility, he makes, possesses, procedures, or otherwise provides himself with, or attempts to make, possess, procure, or otherwise provide himself with, anything described in paragraph (1).

18 U.S.C. § 1791 (1984). The 1984 amendments more clearly defined the two discrete offenses contained in § 1791: (1) providing or attempting to provide contraband to an inmate; and (2) possessing or attempting to possess contraband while being an inmate. *Id.* The 1986 amendments further simplified the statute:

> (a) Offense.—Whoever—

> (1) in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so; or
>
> (2) being an inmate of a prison, makes, possesses, or obtains or attempts to make or obtain, a prohibited object;
>
> Shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 1791 (1986). The types of "prohibited objects" were further defined under § 1791(c), which subsection also defined "prison" to mean "a Federal correctional, detention, or penal facility." *Id.* Notably, the 1984 and 1986 amendments largely retained the limited scope of the original statute and only applied to inmates of traditional federal correctional facilities.

In the 2006 amendments, Congress took clear steps to expand the scope of § 1791. In an amendment with the header "[e]xpanded jurisdiction for contraband offenses in correctional facilities," Congress added the clause: "or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." *See*, Violence Against Women and Department of Justice Reauthorization Act of 2006, Pub. L. No. 109-162, tit. XI, § 1178, 119 Stat. 2960, 3126 (2006). Defendant's assertion that "nothing about this amendment changed the requirement that a prison be a 'prison, institution, or facility in which persons are held in custody,'" is belied by the clear legislative history of § 1791, the header of the amendment, and Congress's choice to add the word "any," all of which indicate an intent to expand the reach of § 1791. *See*, Def.'s Supp. Letter at 9; *See also*, *United States v. Hendrickson*, 949 F.3d 95, 101 n.8 (3d Cir. 2020) ("The definition [of § 1791] was amended again in 1986, when it was revised to 'a Federal correctional, detention, or penal facility.' That remained the definition until the 2006 amendment. This history reflects that Congress acted purposefully in expanding the reach of § 1791 through the 2006 amendment.").

Congress' intent to expand the scope of § 1791 is also evidenced by a review of its surrounding statutes. *See*, *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 786

n.17 (2000) ("[I]t is well established that a court can, and should, interpret the text of one statute in the light of text of surrounding statutes, even those subsequently enacted.") (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). For instance, 18 U.S.C. § 1792, which also was enacted in 1948 as part of the same statutory scheme as § 1791, prohibits anyone from engaging in mutiny or riot "at any Federal penal, detention, or correctional facility." *See*, 18 U.S.C. § 1792. This language tracks the language that originally was used in § 1791. While § 1792 also was amended in 1984, 1986, and 1994, the only change Congress made to the scope of the statute was to add the word "detention" in the 1986 amendments. *See*, Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 1792, 100 Stat. 3592, 3607 (1986). That Congress chose not to add any of the expanding language to § 1792 that it purposefully added to § 1791 is strong evidence that Congress did expand the scope of § 1791. *Cf. United States v. Davis*, 588 U.S. 445, 458 (2019) ("And we normally presume that the same language in related statutes carries a consistent meaning.").

Nevertheless, Defendant maintains that § 1791 does not apply to courthouse holding cells because § 930 explicitly includes courthouse holding cells under the definition of "Federal court facility." *See*, Mot. at 8 ("Section 930 is a perfect match to the factual allegations here. Section 930 prohibits possessing a dangerous weapon in a 'Federal court facility,' which specifically includes 'prisoner holding cells.'"). Defendant's argument fails because § 1791 and § 930 are not coextensive, and the policy considerations underpinning § 1791 support an expansive reading and application of the statute.

First, while both § 1791 and § 930 can reach courthouse holding cells, they only intersect in the exceedingly narrow circumstances currently before the Court: where an inmate possesses a deadly weapon in a courthouse holding cell. Section 1791 would not apply where a noninmate possesses a weapon in any part of a federal courthouse. Nor would § 930 apply to the possession

of any of the other prohibited items delineated in § 1791(d)(1) (*e.g.*, controlled substances, U.S. or foreign currency, cellphones) if possessed in a courthouse holding cell. That these statutes might overlap in this one narrow circumstance does not support the conclusion that § 1791 categorically cannot reach a courthouse holding cell.

Second, the result of Defendant's argument is plainly at odds with the policy goals of § 1791. Section 1791 is a prison integrity statute that was enacted to further Congress' goal of ensuring the safety of the federal prison system by preventing the introduction and circulation of a wide range of prohibited items within federal prisons. *See, e.g.*, *United States v. Comstock*, 560 U.S. 126, 136-37 (2010) ("Moreover, Congress, having established a prison system, can enact laws that seek to ensure that system's safe and responsible administration by, for example, . . . creating further criminal laws governing entry, exit, and smuggling [of contraband]. . . .") (citing 18 U.S.C. § 1791). Section 930, on the other hand, is a general federal security statute that prohibits the possession of dangerous weapons in a range of federal facilities, including federal courthouses. Section 930 is not intended to address the movement of contraband in or throughout federal prisons. While both statutes prohibit the possession of weapons in a courthouse holding cell, when a criminal defendant becomes an "inmate" of a "prison," the courthouse holding cell becomes the threshold entry point to the federal prison system, and the heightened concerns animating § 1791 apply.

Accepting Defendant's argument necessarily would mean that a criminal defendant remanded pending trial would be liable under § 1791 for possessing drugs, U.S. currency, or a cellphone in a courthouse holding cell, but not for possessing a deadly weapon, an absurd, incongruous result. A prison contraband statute such as § 1791 cannot be read to treat deadly weapons *more* permissively than other, perhaps less dangerous forms of contraband. *See*, *Yerdon v. Henry*, 91 F.3d 370, 376 (2d Cir. 1996) ("Where an examination of the statute as a whole

demonstrates that a party's interpretation would lead to 'absurd or futile results … plainly at variance with the policy of the legislation as a whole,' that interpretation should be rejected.") (quoting *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 120 (1988)). While the Government retains discretion to charge a defendant in these circumstances only under § 930, that same broad discretion entitles the Government to bring charges under multiple statutes that may be violated by the single act of a defendant. *See*, *United States v. Dumitru*, 991 F.3d 427, 436 (2d Cir. 2021) ("Prosecutors have extremely broad power to decide which criminal statutes to charge a defendant with violating."); *See also*, *United States v. Hatfield*, 2009 WL 2182593, at *2 (E.D.N.Y. July 22, 2009) ("'[A] single act can violate two statutes.'") (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Thus, the fact that § 930 specifically may address the possession of weapons in a courthouse holding cell does not mean, as a matter of law, that § 1791 cannot also prohibit the possession of weapons in courthouse holding cells by an "inmate." Considering the legislative history of § 1791 and its neighboring statutes, the Court finds that the term "prison" as defined under § 1791 does encompass a courthouse holding cell. Accordingly, Defendant's motion to dismiss Counts Six and Seven on this ground is denied.

## III. Attempting to Provide Contraband in Prison, 18 U.S.C. § 1791(a)(1)

Defendant alternatively moves to dismiss Count Six on the ground that he cannot be charged with § 1791(a)(1) for attempting to provide contraband to his future self. *See*, Mot. at 9. Defendant argues that, as a matter of law, a criminal defendant can be liable under § 1791(a)(1) only where he provides or attempts to provide contraband to another person that is an inmate, and to hold that a defendant could be liable for attempting to provide contraband to his "future self" would create surplusage in the statute by equating the term "provide" under subsection (a)(1) with "possess" under subsection (a)(2). *Id.* The Government counters that: (1) under a plain reading

of § 1791, Defendant did attempt to provide contraband to another person who would become an inmate of a prison (*i.e.*, his future self); and (2) the statute does not require two people, one who attempts to provide contraband and another who is the intended recipient. *See*, Opp'n at 4.

Count Six of the superseding indictment charges Defendant with attempting to provide a razor blade to his future self in the MDC after he became an inmate. *See*, Sup. Indictment at 3. Section 1791(a)(1) provides: "Whoever—(1) in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so … shall be punished as provided in subsection (b) of this section." 18 U.S.C. § 1791(a)(1).

The plain language of § 1791(a)(1) clearly requires two distinct people. As the term "provide" is not defined in the statute, it must be construed with its ordinary or natural meaning. *See*, *Smith v. United States*, 508 U.S. 223, 228 (1993). The ordinary meaning of "provide is to furnish; supply; to make ready; to make available; afford." *United States v. Sattar*, 314 F. Supp.2d 279, 297 (S.D.N.Y. 2004) (citing *Webster's II: New Riverside Univ. Dict.* 948 (1994)) (cleaned up). As used here, "provides to" is a transitive verb indicating the conveyance of an object from one person to someone else. Necessarily, it requires: (1) a subject, "whoever;" (2) a direct object, "a prohibited object" such as a razor blade; and (3) an indirect object or recipient, "an inmate of a prison." Under its ordinary, common sense meaning, "provide to" indicates two or more people. One does not "provide" something to himself that he already has possession of, as the word "provide" connotes a transference of custody of the object at issue by the subject to the recipient (*i.e.*, a giver and a receiver).

To accept the Government's argument would create two levels of surplusage in the statute. *See*, *Polansky*, 599 U.S. at 432 ("[E]very clause and word of a statute should have meaning.") (internal quotation marks omitted). First, the word "inmate" would be swallowed by "whoever." "The common meaning of the word whoever is whatever person, any person at all, no matter who."

*United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003) (internal quotation marks omitted). "Whoever" could, standing alone, apply to anyone, including an inmate such as Defendant. The word "inmate" clearly is intended to capture a narrower class of persons, including, as discussed above, pretrial detainees like Defendant. If, as the Government contends, the "whoever" can be the same person as the "inmate," then the separate reference to "an inmate" would be superfluous. *See*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Second, the Government's interpretation would absorb § 1791(a)(2)'s prohibition on inmates possessing contraband into (a)(1)'s prohibition on providing contraband to an inmate. The Government alleges that Defendant hid "drug paraphernalia and a weapon on his person in an effort to provide himself that contraband once he became a prisoner." *See*, Sup. Indictment ¶ 6; Opp'n at 4. While the Government uses language that mirrors the statute, what it has described is simply Defendant's continued possession of a razor blade. *See*, "Possession," *Black's Law Dictionary* 1183 (7th ed. 1999) ("The fact of having or holding property in one's power; the exercise of dominion over property."). Even if the "future version" of Defendant is a legally cognizable and distinct "person" from the "present" Defendant, a contention for which the Government has offered no support, at no point did the razor blade ever leave Defendant's possession with the intent to provide it to his future self (*e.g.*, through the mail). At most, the Government has described possession of a razor blade with an intent to continue to possess the razor blade after Defendant was remanded. If, as the Government argues, Defendant's continued possession both pre- and post-remand also constitutes "providing" it to himself, the prohibition on "possession" under subsection (a)(2) would serve no independent purpose, as any possession under § 1791(a)(2) could always be charged as an attempt to provide to oneself under § 1791(a)(1).

The Government unpersuasively argues that, since Congress more clearly included a two-person requirement in other statutes, such a requirement does not exist here. *See*, Opp'n at 4-5. The Government relies on the language of various unrelated criminal statutes regarding conspiracy, crimes of violence, violent felonies, and fraud. *Id.* (citing 18 U.S.C. §§ 371; 924(c)(3)(A); 924(e)(2)(B)(ii); 1346). However, it is black letter law that "Congress need not state its intent in any particular way, and we have never required that Congress use magic words." *Soto v. United States*, 605 U.S. 360, 371 (2025) (internal quotation marks omitted) (citing *FAA v. Cooper*, 566 U.S. 284, 291 (2012)). Thus, even if Congress typically utilizes particular language to indicate that a statute requires two people, Congress is not required to use that same language every time that it intends to indicate a two-person requirement. *Id.* It is enough that here, based on the plain language of the statute, Congress clearly indicated that the "whoever" and the "inmate" of § 1791(a)(1) are meant to be two distinct individuals.

Finally, the Court is not persuaded by the Government's argument that other criminal statutes can be violated by purely self-directed conduct. Opp'n at 5. Each example the Government provides necessarily involves conduct that affects someone else or an external object. *Id.* (discussing interstate stalking, arson). Thus, the Court finds that a criminal defendant cannot be liable under 18 U.S.C. § 1791(a)(1) for attempting to provide a contraband to a future version of himself. Accordingly, Defendant's motion to dismiss Count Six is granted and denied as to Count Seven of the superseding indictment.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss the superseding indictment is granted to the extent that Count Six is dismissed and is denied as to Count Seven.

SO ORDERED.

Dated: Brooklyn, New York
October 20, 2026

/s/
DORA L. IRIZARRY
United States District Judge